Case 3:98-cv-00666-W -CGA   Document 1   Filed 04/07/98   Page 1 of 11

US DISTRICT COURT INDEX SHEET











ANDREW & WILLIAMSON

FERRO

ELC    4/13/98    10:44
3:98-CV-666
*1*
*CMP.*

| | |
|---|---|
| 1 | LAW OFFICES OF MORGAN J.C. SCUDI |
| 2 | Morgan J.C. Scudi, Esq. (147942)<br>Kenneth R. Brutus, Esq. (190876) |
| 3 | 5440 Morehouse Drive, Suite 4400<br>San Diego, California 92121-1798 |
| 4 | (619) 558-1001 |
| 5 | Attorneys for Plaintiff, A&W SALES COMPANY, INC. |



FILED
APR _ 7 1998
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

ANDREW & WILLIAMSON SALES COMPANY, INC., a California Corporation,

   Plaintiff,

v.

ADOLPH J. FERRO, an individual, MATTHEW KRAMER, an individual, GILBERT N. MILLER, an individual, LOIS O. ROSENBAUM, an individual, and STOEL RIVES, LLP, an Oregon limited liability partnership,

   Defendants.

CASE '98 CV 0666 K (CGA)

COMPLAINT

DEMAND FOR TRIAL BY JURY

NOW COMES, ANDREW & WILLIAMSON SALES COMPANY, INC. ("A&W"), by and through its attorney, Morgan J.C. Scudi, and for its Complaint against ADOLPH J. FERRO ("FERRO"), MATTHEW KRAMER ("KRAMER"), GILBERT N. MILLER ("MILLER"), LOIS O. ROSENBAUM ("ROSENBAUM") and STOEL RIVES LLP ("STOEL RIVES"), states the following:

**GENERAL ALLEGATIONS OF JURISDICTION AND VENUE**

1. Plaintiff, A&W is, and at all times relevant to this action, was a California corporation with its principal office located in San Diego, California.

2. Defendants FERRO, KRAMER AND MILLER are former Directors of A&W, and are individuals currently living in the State of Oregon.



G:\CLIENTS\A&W\STOELRIV\COMPLAIN.WPD     1     

3. Defendant ROSENBAUM is, upon information and belief, a partner in the law firm of STOEL RIVES, is a former counsel to A&W and a resident of Oregon.

4. Defendant, STOEL RIVES is, upon information and belief, an Oregon limited liability law partnership which acted as counsel in California for A&W.

5. Jurisdiction is based upon 28 USC §1332, diversity of citizenship between Plaintiff and Defendants, who are citizens of different states, and the matter in controversy exceeds $5.7 million, exclusive of interest and costs.

6. Venue is proper based upon 28 USC §1391(a)2 in that a substantial part of the events and omissions giving rise to the claims herein occurred in this judicial district.

7. A&W has been in business in San Diego producing and distributing fruits and vegetables since 1986. It was founded by Fred W. Andrew and Fred L. Williamson. By 1996, the shares of A&W were controlled, 50% by the Andrew family (40% by Fred W. Andrew, and 10% by his son, Keith Andrew) and 50% by the Williamson family (40% by Fred L. Williamson, and 10% by his son, Fred M. Williamson).

## GENERAL ALLEGATIONS RELATED TO ALL CAUSES OF ACTION

8. A&W has been in business in San Diego producing and distributing fruits and vegetables since 1986 when it was founded by Fred W. Andrew and Fred L. Williamson.

9. On or about December 12, 1996, Epitope, Inc. acquired the shares held by the Andrew family and Williamson family and expanded the Board of Directors of A&W from two, consisting of Fred W. Andrew and Fred L. Williamson, to six by adding Ferro, Kramer, Miller and Richard K. Bestwick.

10. Upon information and belief, Ferro was an officer and director of Epitope, Inc., and Miller, Kramer and Richard K. Bestwick were officers of Epitope, Inc. at all times while they served on the Board of Directors of A&W.

11. In February of 1997, the Board of Directors and/or business policy committee of Epitope, Inc. met and informed Fred L. Williamson, President and Chief Executive officer of A&W and Director of A&W, that Epitope, Inc. would not honor its financial promises to A&W.

12. Upon information and belief, Epitope Inc. was at all times relevant to this lawsuit engaged in research and development in conjunction with Smith, Kline Beecham for the development and marketing of testing and vaccines developed for the identification and prevention of Hepatitis A.

13. On or about March 28, 1997, there was an outbreak of Hepatitis A announced in Calhoun County, Michigan which was preliminarily associated with the serving of fresh salads and strawberry shortcake desserts.

14. A&W manufacturers frozen processed strawberry products from a facility located in San Diego, California.

15. Information was transmitted by the USDA to A&W that a frozen processed strawberry product manufactured by A&W in San Diego was utilized by the Calhoun County School System which served strawberry shortcake to its children approximately six weeks prior to the Hepatitis A outbreak. Fred L. Williamson, immediately relayed this information to Ferro, Chairman of the Board of A&W as well as to directors Miller and Kramer.

16. On or about March 28, 1997, A&W began a voluntary recall of its processed strawberry product.

17. On or about April 1, 1997, Epitope at the direction of Ferro began issuing press releases concerning the outbreak of Hepatitis A and the recalled strawberries by A&W. Subsequent press releases by Epitope, Inc., initiated by Ferro, Kramer and Miller, incorrectly emphasized that the A&W processed strawberry product manufactured in San Diego did not comply with the requirements of the USDA for the School Lunch Program -- when in fact the product does comply with the requirements of the USDA School Lunch Program.

18. Following the press releases initiated by Ferro, Miller and Kramer, the USDA, the FDA, the FBI and the U.S. Attorney's office began investigating A&W for the alleged improper sale of a foreign product into the USDA School Lunch Program. These investigations were triggered in part by the press releases initiated by Directors Ferro, Miller and Kramer which alleged wrongdoing on the part of A&W.

19. On or about April 2, 1996, Chairman of the Board of A&W, Ferro, requested the

resignation of the President, CEO and Director of A&W, Fred L. Williamson, and Fred L. Williamson resigned.

20. Upon information and belief, Epitope, Inc. had retained the services of Rosenbaum and Stoel Rives, to investigate the possibility of rescinding the December 12, 1996 stock purchase by Epitope, Inc. following the February 1997 meeting of Epitope, Inc.'s Board of Directors and/or Business Policy Committee wherein Epitope, Inc. notified A&W that it would not honor its financial commitments to A&W.

21. Upon information and belief, Rosenbaum and Stoel Rives worked with Ferro, Miller and Kramer on theories to sever the Epitope, Inc. relationship with A&W prior to April 1, 1997.

22. On or about April 1, 1997, Rosenbaum as a partner of Stoel Rives, traveled to the San Diego Offices of A&W accompanied by Ferro, Miller and Kramer and began the representation of A&W with regard to the investigation of A&W by the aforementioned agencies including the FBI and the U.S. Attorney's office. During the weeks of April 1, and April 7, Rosenbaum acting as counsel for A&W released documents of A&W to the FBI and the U.S. Attorney's office, interviewed A&W employees, counseled A&W's management on duties with regard to the response of potential subpoenas, testimony and interviews by the FBI and U.S. Attorney's office, and negotiated directly on A&W's behalf with the U.S. Attorney's office.

23. During the representation of A&W by Rosenbaum and Stoel Rives in April of 1997, these attorneys took the position that A&W frozen processed strawberry product did not qualify for sale into the USDA School Lunch Program and that by the Act of sellinig said product to the USDA, A&W committed a fraudulent act, when in fact, pursuant to the Buy American Act and the U.S. Code of Federal Regulations, the A&W product is a manufactured food which is manufactured in the United States and qualifies for sale both to the U.S. government and to the USDA, including its school lunch program.

24. Also during the weeks of April 1 and April 7, 1997, Miller acted as CEO of A&W and directed the activities of Rosenbaum and Stoel Rives and took direction from Ferro, and directed the activities of Kramer with regard to A&W.

25. On or about April 7, 1997, at the direction of Ferro, Rosenbaum and Stoel Rives

filed an action in the Federal District Court for the District of Oregon, entitled *Epitope, Inc. v. Fred L. Williamson, Fred M. Williamson, Fred W. Andrew and Keith Andrew, defendants* alleging a complaint for recision, fraud and securities violations. Notably, the allegations contained in the complaint, were gleaned by Rosenbaum while acting as counsel for A&W, reviewing the records of A&W and interviewing A&W's employees and from ongoing discussions with the U.S. Attorney's office and the FBI concerning the investigation of A&W.

26. Notably, the complaint drafted by Lois Rosenbaum at the direction of Ferro, alleged that A&W and the individual defendants knowingly filled USDA contracts with strawberries grown in Mexico and recounted transactions and history that could only have been learned while representing A&W during the last week of March and the first week of April, 1997.

27. Notably also is the fact that the allegations drafted by Lois Rosenbaum at the direction of Ferro, included facts and allegations that found their way directly and almost simultaneously into complaints filed in the States of Michigan, Oregon and California by civil claimants against A&W for alleged fraud, and ultimately found their way into an indictment drafted by the U.S. Attorney's Office against A&W and Fred L. Williams.

### FIRST CAUSE OF ACTION

**Breach of Fiduciary Duty Against All Defendants**

28. Plaintiff reallege and incorporates by reference the allegations of paragraphs 1 through 27.

29. Defendants, Ferro, Miller and Kramer, as officers and directors of A&W had a fiduciary duty to A&W and acted as trustees A&W.

30. Rosenbaum and Stoel Rives by reason of their representation of A&W had a fiduciary and trustee relationship with A&W and duties described by the California Code of Professional Responsibility to their client A&W.

31. During March, April and May of 1997, all defendants simultaneously had duties to Epitope, Inc., which created a conflict of interest for them in carrying out their fiduciary and trustee obligations to A&W.

32. During March, April and May of 1997, all defendants breached their fiduciary and trustee deed duties to A&W, by acting on behalf of the best interest of Epitope, Inc., by failing to recuse themselves from acting on behalf of A&W, and by taking actions on behalf of A&W to the detriment of A&W.

33. As a direct and consequential effect of the breach of their fiduciary and trustee duties to A&W, defendants caused A&W immediate losses in excess of $5.7 million and consequential losses which are yet to be determined.

### SECOND CAUSE OF ACTION

#### Intentional Misrepresentation Against All Defendants

34. Plaintiff hereby incorporates by references paragraphs 1 through 32, inclusive as though fully set forth herein.

35. Rosenbaum made representations to A&W, to the U.S. Attorney's office and the others as to a past or existing material fact. Rosenbaum represented herself to be Plaintiff's attorney during the investigation of A&W initiated by USDA, FDA and the U.S. Attorney's Office in March and April of 1997.

36. The representation was false; according to Rosenbaum herself, she is not and never has been Plaintiff's attorney.

37. Rosenbaum either knew the representation was false when made or made the representation recklessly without knowing whether it was true or false. Rosenbaum and Stoel Rives must have known whether or not she was Plaintiff's attorney should have been knowledgeable of the facts before making a statement as to her representation. Therefore, Rosenbaum and Stoel Rives either knew the statement was false or made it reckless without knowing the validity of the statement.

38. Defendants Ferro Miller and Kramer actively participated in the representations made by Rosenbaum and Kramer. They were false when made or made them recklessly.

39. Rosenbaum made the representation that she was counsel for A&W for purposes of inducing Plaintiff and the U.S. ATTORNEY's office to rely upon that representation and to act or

refrain from acting in reliance upon that representation. Upon information and belief, Rosenbaum made statements for purposes of persuading plaintiff to allow its officers and directors to cooperate with her in her investigation, to turn over confidential documents to her, to discuss confidential matters openly with her and to refrain from obtaining other counsel.

40. Plaintiff was unaware of the falsity of the representation acted in reliance upon the truth of the representation by Rosenbaum and Stoel Rives and justifiably relied upon the representation. Plaintiff was unaware that Rosenbaum was not its attorney and allowed Rosenbaum to conduct interviews of its officers and directors and provided her with access to confidential documents based upon her statement that she was its attorney, and Plaintiff had no reason to know or suspect was not its attorney.

41. As a result of the reliance upon the truth of the representations by Rosenbaum and Stoel Rives, Plaintiff was damaged. If Plaintiff had not relied upon the representations and had been informed that Rosenbaum and Stoel Rives was not its attorney, the information that found its way into the complaint drafted by Rosenbaum and Stoel Rives on behalf of Epitope, Inc. and filed at the Federal District Court for the District of Oregon on April 7, 1997 would not have been disclosed. Further, Plaintiff would not have allowed Rosenbaum and Stoel Rives access to its documents and would have retained counsel to represent A&W and to represent publicly that the A&W frozen processed strawberry product sold by brokers to the USDA did comply with requirements of the Federal Buy America Act and that Code of Federal Requirements for products sold to the USDA for purposes of the School Lunch Program.

42. As a result of the intentional misrepresentation of Rosenbaum and Stoel Rives, A&W was damages in the amount of $5.7 million plus consequential damages yet to be determined.

### THIRD CAUSE OF ACTION

**Negligent Misrepresentation Against All Defendants**

43. Plaintiff hereby incorporates by reference in paragraphs 1 through 42, inclusive as though fully set forth herein.

44. Defendants, Ferro, Miller, Kramer, Rosenbaum and Stoel Rives made representations as to a past or existing material fact. They represented that they were acting on behalf of A&W as officers and directors of A&W and attorneys for A&W respectively.

45. The representations made by these Defendants were untrue. According to Rosenbaum herself, she and Stoel Rives is not and never was Plaintiff's attorney, and Ferro, Miller and Kramer who gave direction to Rosenbaum and Stoel Rives were according to Rosenbaum, acting as officers and/or directors of Epitope, Inc. Defendants made these representations without any reasonable ground for believing them to be true, as Rosenbaum herself certainly must have known whether or not she was Plaintiff's attorney and Ferro, Miller and Kramer must have known whether or not they were acting on behalf of A&W or Epitope, Inc.

46. The statements made by these Defendants were made with the intent to induce A&W to rely upon them and upon information and belief these Defendants made these untrue representations for the purpose of persuading A&W to allow its officers and directors to cooperate with her investigation, to provide privilege and confidential information from A&W to the attorneys acting on behalf of Epitope, Inc. and to turn over confidential documents to her and to refrain from separate counsel for A&W.

47. Plaintiff was unaware of the falsity of the representations made by these Defendants, acted in reliance upon the truth of the representation and was justified in relying upon these representations. Plaintiff was unaware that Rosenbaum and Stoel Rives was not its attorney and that Ferro, Miller and Kramer were not acting as officers and directors of A&W while directing the activities of Rosenbaum and Stoel Rives and while in the offices of A&W in San Diego, California during the months of March, April and May of 1997.

48. As a result of the reliance by A&W upon the truth of the representations made by these defendants, A&W was damaged in amounts to be proven at time of trial.

## FOURTH CAUSE OF ACTION
### Conversion Against All Defendants

49. Plaintiff hereby incorporates by reference paragraphs 1 through 44, inclusive as

2.    Punitive damages for counts 2 and 3 according to proof;

3.    For reasonable attorneys' fees;

4.    For costs of suit incurred; and

5.    For such other and further relief as this Court deems proper and just.

Dated: April 7, 1998

Respectfully submitted,

LAW OFFICES OF MORGAN J.C. SCUDI

By: _____
Morgan J. C. Scudi
Attorneys for
Andrew & Williamson Sales Co., Inc.

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

### I (a) PLAINTIFFS
ANDREW & WILLIAMSON SALES COMPANY, INC., a California Corporation.

### DEFENDANTS
ADOLPH J. FERRO, MATTHEW KRAMER, GILBERT N. MILLER, LOIS ROSENBAUM, STOLE RIVES

APR - 7 1998

FILED

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** SAN DIEGO, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** (OREGON)
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES USE THE LOCATION OF THE TRACT OF LAND INVOLVED

### (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Law Offices of Morgan J.C. Scudi
Morgan J.C. Scudi, Esq. (619) 558-1001
Kenneth Brutus, Esq.
5440 Morhouse Dr. Suite 4400, San Diego, CA

### ATTORNEYS (IF KNOWN)
'98 CV 0666 K (CGA)

### II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in This State | ☒4 | ☐4 |
| Citizen of Another State | ☐2 | ☒2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

### IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).
Breach of Fiduciary Duty, Intentional Misrepresentation, Negligent Misrepresentation, Conversion, Interference with Prospective Advantage  29: 1109

### V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury - Medical Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 315 Airplane Product Liability | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (13958) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | | ☒ 380 Other Personal Property Damage | LABOR | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl Ret Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

### VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)
☒ Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appelate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

**DEMAND $**

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

### VIII. RELATED CASE(S) IF ANY (See Instructions):
JUDGE _____ Docket Number _____

**DATE** 4/7/98

#037730

**SIGNATURE OF ATTORNEY OF RECORD**
Kenneth Brutus